Page number 19-1071, Flyers Rights Education Fund, Inc., doing business at flyersrights.org. Paul Hudson, Petitioner v. United States Department of Education, et al. Mr. Sandler, Petitioner, and Mr. Rutledge, Respondent. Good morning. Good morning, Your Honor, and may it please the Court. The Department of Transportation is required by its authorizing statute to consider, in its regulation of the airline industry, the prevention of unfair and deceptive practices. In response to the rulemaking petition followed by Flyers Rights in this case, the Department simply failed to offer any adequate explanation for why it would not, in any way, address the concealment by air carriers and their deceit of passengers about the rights of international passengers to compensation for delay in international air travel under the Montreal Convention. At the outset, since the government has questioned the standing of Flyers Rights to bring this challenge, I'd like to address that first briefly. Our contention is Flyers Rights has associational standing to challenge the Department's decision in this case not to engage in rulemaking because the organization satisfies, first, the indicia of membership criteria under the Supreme Court's decision in the Hunt case. Although Flyers Rights members do not select members of the governing body, they do provide most of the financing for the organization, and they do guide the activities of the organization because Flyers Rights surveys its members. They make suggestions. Beg your pardon? They make suggestions. In other words, what I'm getting at is this functional equivalent argument you make. You've identified two members in those declarations, although they say they're members slash supporters. I mean, I may support a lot of things, but I'm not a member necessarily of that organization. So you say you have 50,000 members and supporters. Based on what you submitted, I only see that there are two members. And for all I know, based on what you submitted, those two members are funding all your operations. No, the members reference to members and supporters is used interchangeably because they weren't using it in a legal sense, but these members. Well, but clearly I don't know the basis for that when we are clear that there's a difference. A lot of people, you know, and in the Supreme Court, the union dues cases, I mean, these distinctions are made. So I'm just saying, based on what you filed, I see two members and that's it. Well, there are, and there's information in the record, I think in the standing declaration, that there are tens of thousands of individuals that. You say 50,000 members slash supporters. Well, members who are, those are the members who finance, provide the majority of financing for the organization, and whose views guide the activities of the organization. How do you become a member? Beg your pardon? How do you become a member? Becoming a member basically involves signing up, you know, generally online to receive information and communications from the organization. Are you charged for that service? No. There's no mandatory dues. And again, this is not dissimilar than the situation presented at the district court in the AARP case. So you talk about the Apple Growers case, where there's a functional equivalent. But there, all three criteria were met. Here, at best, you meet two of the three. You don't meet the control element. So why would the court view this as an association which has Article III standing? One of you mentioned to Judge Randolph, there are no membership dues. There's no initiation fee. You just sign up online. The situation was similar in the AARP case. The case is considered by the district court applying the standards of this court. In AARP, which I'm a member, there are dues, but you don't have any governance rights. Any appellate case? I guess this functional equivalent, I was just trying to figure out what does that mean? And what are the elements? And so the case you cite from the Supreme Court, clearly the three elements were met. Here, let's assume you met the membership element. All right? But you haven't met the control element. That's right. And so why should you be deemed a functional equivalent? We've cited several cases, including the two AARP cases from the U.S. District Court in D.C., in which two of the three criteria were found sufficient to be functional equivalent. So I'm asking you why should this appellate court agree with that position when the whole point of standing is to show it's a rigorous test, growing more rigorous by the decade? It is a rigorous test, but I think the essence of what the Supreme Court was getting at in the Hunt case that was picked up on in these district court cases is that the functional equivalence, the essence of it is that the organization speaks for a discrete group of people who are invested in it in some way, who support it financially, who guide the organization. But we have no information about financial support. We know that you have two members-slash-supporters. We know that you have 50,000 members-slash-supporters. And so what's different from your group and a group of citizens who want to come together and urge certain policy changes? The difference is that, again, the 50,000 members are the ones who provide the majority of the financial support for the organization. Well, you're telling me that now, but it's not in your papers. It's in the supplemental declaration. No, it isn't. I looked. In the supplemental declaration and in part of the reply brief, it says... So your argument is that you didn't have to demonstrate standing because it was self-evident, yet the name of your organization is a fund. It's not an association or something else. So I thought, well, it's self-evident that you are an association that has standing. So then we get to court, and you're challenged, and you file these supplemental declarations. But I don't know if they go far enough. That's all I'm raising with you. And, again, the basis that we believe that the burden was on us to show that we had individual members who suffered specific concrete injuries, and it's undisputed and it's all that's required that at least one of the members of this 50,000 suffered a concrete injury, the individual who had seven hours. If you have members that participate in the governance of your organization, that's one assurance that you're not off on a lark, that you'd be voted out of office if, in fact, you're bringing litigation on behalf of the members that the members don't agree with. If you don't have that, if you don't have any governance, if you don't have any members that have any authority, then the question becomes, are you really representing anybody in this particular matter? Again, the same is true, found true in the American Association of Retired Persons, which is the largest membership, acknowledged to be one of the most powerful in the United States. And the judge found, district judge, in that case that they did represent the interests. The standing issue was raised. You have another case pending before this court, don't you? You have another case pending before this court? We do. And that hasn't been decided yet? That hasn't been decided. Was the issue of standing raised in that case? The issue of standing was raised in that case, but in the prior case, in terms of what our burden was in the opening brief, in the prior case we brought before this court on the issue of regulation of seat sizes, the government didn't question the standing of the organization. Well, the plaintiff there was you and the organization. It wasn't just the organization that was a plaintiff in that case. It was you and an individual. Right. An individual flyer. Well, the plaintiff in this case also has experienced the situation, although because of his expertise he's not deprived of knowing information about his rights under the Montreal Convention. I guess your theory is that if you were off on a LARC, you'd go bankrupt because people would cut off the funds that they're sending. Exactly. Right. And if they didn't, that's right, if they didn't. Well, I'm thinking about organizations where there are one or two people who fund the organization. And they may go off on LARCs, but they fund the organization. They're dictating the policy. They can throw the CEO out if they don't like what's going on. That's not your organization. That's right. That's not our organization. It's funded by many, many people with their individual contributions, and those are the individuals whose views are also solicited and guide the organization who are treated as members. If I make a contribution to an organization, I'm not a member necessarily. Yes. If you are on the list and you make a contribution, you are treated as a member of the organization. I know, but all I'm getting at is just suppose all these charitable contributions one makes doesn't mean I'm a member of the organization to which I'm making the contribution. That's true. Many charitable organizations are not membership organizations. They don't treat the individuals as members in any meaningful sense. All right. Can I ask you? I want to ask you about the MIRDS a bit. One of your arguments, as I understand it, is that the response by DOT to your petition for rulemaking was inadequate. It was very brief, et cetera, right? Yes. That's your argument. Are you aware that under the APA, and this is governed by the Administrative Procedure Act, 555E requires the agency to give only a brief response in denying a petition for rulemaking. So they were in compliance, the DOT was in compliance with the APA in not saying anything more than it did. You have enough to go on. So I don't see where the violation of the APA is. It's not the brevity of the response that's the issue. It's the assertion in that one paragraph that the carriers are adequately disclosing their passengers, their compensation rights, is simply not supported by the record. Didn't they also say that we have a rulemaking, or we do this in a separate rulemaking? That separate rulemaking was to require the airlines to post language, put language in the tickets or ticket envelopes or at the counter, and if I could just briefly read it to you because it's clear it does not inform anybody that they have any rights of the nature. Let me just follow up on that. Did you participate, did your organization participate in that rulemaking? I think they did participate in the rulemaking. They put comments on the proposed regulation? I'd have to check. Did your organization file a petition for judicial review of those regulations? No, because we didn't regard it as sufficient. Isn't that a reason to challenge it? At the time these regulations were issued, we had already filed this rulemaking petition. Our own rulemaking petition was under review. That doesn't mean you couldn't file another challenge to the final rule that issued. The fact that you have this case pending doesn't preclude you from filing a challenge. That's true. So what makes me wonder is whether the proper forum for the complaints that you're raising before us would have been in a challenge to that particular rulemaking, not as a petition for its entirely separate rulemaking, which would almost necessarily duplicate to some extent the prior rulemaking. What's your response to that? The response is that what we were seeking in the petition for rulemaking was some requirement for disclosure of the existence and rights of the passengers under the Montreal Convention, whereas this other rulemaking, all it was was to advise passengers that they didn't have, they basically didn't have rights, or that their rights were limited. But the notice of proposed rulemaking in the other docket didn't say that. In other words, it wasn't limited that way. What the agency ultimately decided to do may be limited, but the notice of rulemaking, the way the agency responded to your petition, was to say, you know, we're going to consider these things in this other rulemaking. Now, whether they did, you didn't submit comments, and then ultimately your view is that what the agency has required is insufficient. It doesn't, right. It's their statement that... But what about Judge Randolph's point? That's right. Their statement that the language that they require... In other words, we have held that an agency can properly dismiss a petition where there is another proceeding that's covering the same territory. And you can file comments, participate, or when the agency comes out with its final rule, you can seek a petition for review. So why should we even deal with this case when there is this other proceeding that was going to consider the same basic issues of concern to you, that the airlines were not properly disclosing that international passengers had a right to recover damages for delay? Because, again, our petition, I think, was already pending at the time this other proceeding was taking place. Doesn't matter, says our precedent. The agency doesn't have to duplicate its work. That's true. But what they did come up with was not adequate and was not actually responsive to our petition. That's a very good reason to bring an APA challenge to that rule, to participate in the rulemaking and to bring a challenge to it. It was covering sort of what's going to be disclosed to passengers. That was part of it, yes. That was part of the rulemaking that the DOT already did. So part of the rationale here, too, is that Article 3 of the Montreal Convention requires the very disclosure that the government has required here, that is, of the limitations on liability. Is there anything in the Montreal Convention that you can identify that requires disclosure of the affirmative rights to compensation or protection for delay? We have not. It's a good question whether the mere parroting of the language of the Montreal Convention that the treaty governs. I'm not talking about mere parroting. I'm talking the Montreal Convention requires a certain disclosure, and you don't dispute that the disclosure that's done here meets that obligation under Article 3. That's not parroting. That's complying with Article 3 of the Montreal Convention. Your argument seems to be that we need an even bigger disclosure. What I wanted to ask you, is there something in the Montreal Convention that requires a broader disclosure of passenger rights with respect to delay? We did not address that. We relied on the department's obligation to consider unfair and deceptive practices. But I think the answer to your question is yes, that language that says you have to disclose to passengers that the treaty governs doesn't mean that the airlines are supposed to say the treaty governs. Article 3 says disclose the limitations on liability. I think the limitations on liability have certainly been adequately disclosed. It's the existence of the rights and nature of the rights to begin with. But there's nothing in the convention that requires that addition. I'm not asking whether it's good policy or anything like that. As to that, that's your argument that what they've done is it's not that it's compelled by the convention, it's that it's unfair and deceptive. Right. Now, if the government has approved... Unfair and deceptive require a certain mental component. It's not accidental, right? It requires an intent to mislead. And if the government has approved the disclosures that they've made, why isn't that sufficient grounds to determine that whatever these airlines are doing, it's not unfair or deceptive? Because there's nothing in that language that apprises the passengers of the nature existence of their rights and the contracts of carriage. That's not the question. So no one's disputing, I don't think, that the language you want isn't there and that the affirmative here's what you get isn't there. The question is whether it was unfair or deceptive on the part of airlines to do the disclosure that the government approved is sufficient. On what basis is that unfair or deceptive? That's a very strong language. It's unfair and deceptive. What's unfair and deceptive is their contracts of carriage, on which the department also relies, specifically relied in concluding that the disclosure was adequate, where the contracts of carriage contain multiple provisions that are completely contradictory to the Montreal Convention. Don't the contracts of carriage under this new rule have to include the same language about limitations of liability, the same Article 3 language? The contracts of carriage? The contracts of carriage contain that language, but they also contain lots of other provisions that purport to limit the airline's liability in addition to concealing the fact that there are passenger rights to begin with, purport to limit the airline's liability in ways that are completely contrary to the Montreal Convention, to which the department's response in its brief was, well, the Montreal Convention overrides that. But how are passengers supposed to know that, even those who bother to read the contracts of carriage? How are they supposed to know what? The provisions in the Delta contract of carriage that limit liability for compensation to one-night refund of the unused portion of the ticket, one night's lodging, ground transportation, are completely contrary to the Montreal Convention, and in fact the law is that those provisions are unenforceable. How is the average passenger supposed to know that? So what I understand, basically, is you want something like the brochure that the EU requires. That were just simply a few lines in addition to this thing that says you have no rights. It says you have rights to compensation. It doesn't say you don't have any rights. It says any rights are limited. It says the liability of the carriers is limited. Which implies it may be liable, doesn't it? Not necessarily. Many consumer contracts, courts reviewed many times, limitation of liability means you don't get to recover anything. All right. Why don't we hear from Respondent, and we'll give you some time on rebuttal. Good morning. Good morning again, and may it please the Court, I'm Matthew Glover, and I represent Respondent, the Department of Transportation, and Secretary Chao. So could I just jump to a question? I'm an international passenger. I've been sitting on the tarmac for four hours, and I got sent to some city I wasn't intending to go to. Then I had to do all this stuff. So I want to sue. All right. Let's assume I know that delay may be a basis for a cause of action against the airline. What do I do? I have to go directly to court? You can certainly file a complaint with the airline. Right. And tell them what happened and ask for them to compensate me for, I don't know, the $2,000 I had to spend renting a car to get from the new location to where I was going, something like that. Yes. Suppose they turn me down. Then what? I have to come to court? Yes. I would point to, and I can't recall what page it is in the record, but we noted in the response that we have updated our fly rights webpage, the section on delay, and then there's a, I can't recall the name at the moment, of the other webpage. And the fly rights webpage does state that you may have rights on international flights for delay under the Montreal Convention, that you can ask the airline to do that, and that you may enforce those rights. I think they used the phrase in small claims court. So the agency's response is look to the airline's webpage. In part, yes. In part. To your hypothetical, I apologize, or to their petition for rulemaking. No, I understand, yes. So the agency's response to the petition for rulemaking was that it reviewed the contracts of carriage, it reviewed the Montreal Convention requirement, Article 3.4, which in effect is three requirements, the written notice, that it may govern, and that it may limit liability. And that it may govern tells you, and I think you were getting at this with my friend, that you may have some rights there. And so the DOT saw that that was existent and continued to be existent in the contracts of carriage of all the airlines. They reviewed, as Judge Millett discussed with my friend, DOT had an agreement with U.S. carriers on language that they've used. So I was asking you a hypothetical. So your point is go to the webpage of the airline and see what it says there about potential liability. Well, so you could look at your e-ticket, for example. I know, but suppose my e-ticket doesn't tell me that. Well, so the e-ticket has to, by regulation. It says what the convention requires, that there are limitations. What I'm asking for is counsel saying it doesn't tell you enough. All right, I thought your response in part was off, or his response was go to the website where the airline has spelled out more. The contract of carriage often spells out more, and they both point you to the convention. The DOT, this is not inconsistent, but on page 26 of your brief, the DOT says that their own website instructs anybody who is suffering damages from a delay to file a claim with the airlines, and if the airline denies it to go to small claims court and recover. Yes, Your Honor, and I think that's what I was trying to describe with your DOT, that's the government's website, not the airlines. No, but the Montreal Convention only requires the airlines to provide written notice and written notice of the existence of the convention and that it may govern and that it may limit liability, and the airlines are doing that in their contracts of carriage, and under 14 CFR 221, which is part of what was being updated in the ongoing rulemaking that's now complete, the airlines have to provide that same notice that the Montreal Convention may govern, and where it does, it may limit liability. But we're dealing with all of these people who are concerned that they see that, and it doesn't tell them enough. So what Judge Randolph is clarifying for me is it's DOT's website that will provide additional information to any international flyer. Also the Montreal Convention, right? If you have a note . . . No, no, no. I understand that, but I'm not a lawyer. I don't have access to conventions. I may go to the public library to look at it, or I may go and Google, something like that. But all I'm getting at is if they want further information, I thought your response in part is look to DOT's website. Yes, our fly rights website. You can also look at the contract of carriage, and you can look at the convention. You know, the contract and the notice are all telling you . . . When you talk about the contract of carriage, that's my ticket, right? No, Your Honor. What is it? It's the contract between the airline and . . . And you, so . . . Well, what is that? That's my ticket. It's the terms, and it has to be provided for on the airline's webpage in a number of places. I've just done some international travel. I got a lot of data, and I actually read it, not in connection with this case, but just out of curiosity. And, it does tell you a lot of things. It's mostly about you ought to get insurance, things go wrong, et cetera. So, I was just wondering if the agency is taking the position, for some reason, that Judge Millett's question seemed to be underscored, that the airlines are doing all they need to do under the Montreal Convention, and that to the extent DOT is responding to passenger concerns, that that's not enough. It has provided some further information on its website. I don't have any claim as a result of my travel. Just let me be clear about that. But, I think that is interesting, because you get a lot of data, and that's part of the contract of carriage, and that all comes with your ticket. Yes, I would have a couple points to that. Under 14 CFR 221.105, the e-ticket, which may be a shorter page, and it will have links to the contract of carriage, must itself state the Montreal Convention notice. I think there's a certain point font that it has to be stated in, and so you're getting it there before you even look at the contract of carriage. And I would also point you to 14 CFR 259.6, where DOT has promulgated a regulation that allows airlines to use contracts of carriage to create the contract between the flyer and the individual. And I'd like to touch on standing, but if I could close one point on the merits. My friend, when he first got up here, said that DOT was under an obligation to suss out, I'm not sure exactly what his phrasing was, but respect to deceptive practices. The regulation that deceptive practices come under, 41.712, says the secretary may, if she deems it in the public interest. So it's got double discretion. DOT had plenty of discretion here, and that's what would distinguish it from the prior flyer's rights case, where the regulation said DOT shall promulgate minimum safety standards for certain things. So no obligation under the statute or the Montreal Convention to do what the petitioner's asking. Absolutely, Your Honor. Can I ask you, on the explanation for denying the petition included a line, there's insufficient evidence of consumer confusion. What is the test for consumer confusion? Is it would a reasonable person, would a reasonable airline passenger have been aware of their rights, So I think the test that they were looking at is flyer's rights presented evidence of some individuals contacting them because they were confused about rights. We've looked at what's in the contracts of carriage, are they meeting the Montreal Convention, and we've looked at whether the airlines are following the regulations, and DOT's position is that they're following the regulations, they're following the Convention. I think you all are sort of talking past each other. Right. Right, because you all keep saying they're following the Convention, they're disclosing the applicability of the Convention, and the limitations may apply, and they keep going. There's another problem here. Nobody, even lawyers, knows what their rights are or what they can do, and there's no simple place to discover this, and your website is not that helpful. And so I'm trying to figure out on what basis you decided there was no consumer confusion as to what the petition was seeking, passengers' ability to uncover their rights to obtain compensation from airlines in light of delays under certain circumstances. So their petition repeatedly frames that in terms of their rights to delay compensation under the Montreal Convention, and we think that providing them with the notice that's required by the Convention so that they can go to the Convention and look for the primary source of their rights is sufficient. What will that tell me? What will the Convention tell you? Yes. It will tell you that you may be entitled to delay. Up to a certain amount. Sorry? Up to a certain amount. Up to a certain amount if the flight, and I would like to touch standing on that. And the airlines have not done everything they could reasonably do to prevent the delay. Yes, exactly. The airlines must have reasonably, they and their employees and their… You can sue for more than the Montreal Convention provides if you bring a separate action not based on the Montreal Convention. Isn't that correct? For international flights? For international flights. Where the Montreal Convention is active, so between two Montreal Convention countries, my understanding is that it would limit the airline's liability absent some sort of other contractual provision you have. I don't think that's correct. I think for a wrongful death action. We had a case last month involving the Malaysian airline that crashed in the Indian Ocean. And the suit there was for whatever, $100,000 was the limitation on the Montreal Convention. But the suit there was for a greater amount, and it required a shelling of negligence on the part of the airline or on the pilots or whatever. It was a government-run airline. But anyway. Yeah, I confess, Your Honor, Article 19 of the Convention gives you rights for delay, and I believe it's Article 18 or 17, one of the preceding ones. Oh, we're only talking about delay. Yeah, I believe one of the preceding articles gives you rights for wrongful death. And I confess in preparing for this, I haven't reviewed that. It's not an issue. And it's not an issue. I know I'm over time. I would like to touch on it. We've been asking a lot of hypothetical questions. So is it all right if I bring up a new topic and touch on it? What basis is there for someone to understand that they can get money when the Convention talks about special drawing rights? I had never heard of that phrase, and if I had read that, I wouldn't have known that that means money. I wanted to get back to what started this, and that is on what possible basis do you think people can figure out that they have a right to get money damages just for delay if the airline hasn't done everything possible to avoid it? So, again, I would start with DOT has the discretion if it determines that there's been a deceptive practice. I'm not talking about deceptive. I'm just talking about the line and the denial that said we don't think there's sufficient evidence of consumer confusion. Is there any evidence that consumers know what they can do? The evidence that's presented is there are seven emails of consumers contacting them because they're confused. And news articles and an article. Yes. It went beyond the seven emails. I thought, what were you requiring? Nobody in my family knows. Statistical evidence, expert testimony? Again, we think that... What did you mean by that line? Yeah. There's insufficient evidence. Did you just mean they didn't come forward with sufficient evidence that, although they referenced, I think, news articles. I took it as sort of a, we just don't think there's a problem out there, which is commonly what happens when agencies deny petitions. And I couldn't figure out on what possible basis that would happen, that determination was made. I'm sorry. No, no. So the first part of that is that there was insufficient evidence that they're failing to comply with the Montreal Convention. I think I now, I may have been missing your question before, and I was answering that, and there is sufficient evidence for that. And you're asking about the after the or, or otherwise attempting to conceal information regarding delay. No, the last line. Furthermore, there is, furthermore, so this is a separate point. There is insufficient evidence of consumer confusion that would warrant rulemaking on this issue. That's the line I'm asking about. That is to say that the Secretary did not believe that the evidence we've been presented regarding consumer confusion warrants the Secretary exercising her twice over discretion that she may engage in rulemaking if there's a, if she also determines in the public interest that there is a deceptive practice. But she doesn't say it would be against the public interest or anything like that. She says there's just, there's not sufficient evidence of consumer confusion, which I mean is, we don't think there's a problem. It means of consumer confusion warranting rulemaking on this issue. So the Secretary's been presented with the evidence that Flyers Rights has about consumer confusion. I'm just asking how they came to that conclusion. What was the test? That we think, because nobody's arguing here that the contracts of carriage, the signs at the airport are disclosing the affirmative rights. No one's referencing Article 19. Now, I get the convention doesn't require it. I'm not asking about that. This is a separate argument about, there's a problem. DOT, we got a problem out in the real world. People haven't got a clue. Don't ask them to read the Montreal Convention, because nobody knows what a special drawing right is. Okay? And there's just a little line there, and then a whole bunch of stuff about more limitations of liability. There's newspaper articles. They didn't say that the emails were the universe of confused people. They were illustrative of confused people. I'm just trying to figure out, and your own website is just sort of a one-liner, ask the airline, and then go to court. It's not particularly helpful. Your Honor, I don't think that the statute, or I guess I should start with the statute, requires DOT to engage in rulemaking. They're asking for involuntary rulemaking. I'm not arguing that. I'm just trying to understand how this line was reasoned through by the agency, how they came to that conclusion. They looked at the evidence provided by Flyers Rights. In other words, did they think there were only seven emails? Suppose each email involved a family, so it's maybe four people. So we're only talking about 28 consumers. And the secretary said, I'm not going to spend all the time and energy on a rulemaking when all we have is 28 people who don't know what to do. There are thousands of people who are just happy and not complaining. Is that what she meant? Or did she mean, I'm taking this up in this other rulemaking? There's not sufficient evidence for me to do it here. Yes, there's not sufficient evidence for me to do it here. It is on the next page, I think it's 544 of the JA, where we address that we're currently engaged in rulemaking related to both delay for passengers and delay for baggage. And so we were engaged in that. I'm just asking about the conclusion. That seems to be an answer, like there is a problem we're going to address. Or we're going to look into whether there's a problem there, which is here there's no consumer confusion that warrants rulemaking on this issue. Insufficient evidence to warrant on this issue. Now, there was also at the rulemaking stage two filings by Airlines for America describing what their clients do. What we're trying to understand is, did the Secretary say, no, I want more consumer, evidence of more consumer confusion, I want statistics, I want expert testimony, I want a study and report? I think the best way I can frame it is the Secretary said, looking at the evidence on the record, I don't believe any, both Airlines for America and Flyers Rights filings and everything else that we've discussed that was looked at, I don't believe it's enough for me to engage in this discretionary rulemaking, if that makes sense. If I could touch on standing. My friend said a couple of interesting things during his argument. One, in response to a question, I believe from Judge Randolph, he said to join you needed to sign up to receive their info. That looks a lot like Getman versus DEA, where this court said High Times Magazine, which you needed to sign up by paying for a subscription, was not sufficient to create standing. The court has also noted that belonging to a Facebook page and following and passively subscribing to an email list is not sufficient in Sorenson Communications versus FCC. And so if signing up for their... Has anyone had an organization design, an association that says, we are here to promote the rights of homeless people. And we reach out to homeless people, we provide services to them, we talk with them about what they want. They don't pay dues because they're homeless. How would they establish membership? Or can there just be no associational standing for homeless people? No, Your Honor. I think you would need a couple of things. The indicia that you were talking about with my friend, that some of the people with the indicia of membership are, or those individuals with the indicia are sort of driving the policies. So they're engaged in selecting governance for homeless individuals who may have a variety of their mental health or substance abuse. Or they are just, they have neither of those issues and it's all they can do each day to struggle to get by. They don't have time to be picking CEOs. But they are all in care about homelessness issues. They talk, there's meetings, they have a forum for getting together and figuring out what do we want to tackle now. That wouldn't be enough. Your Honor, the forum and the talking about what do we want to tackle now, if the organization is responding to those needs, that might be enough. That's exactly what they have here. They say we poll our folks and that's what drives our decisions. Presumably it was polling information from folks here that said let's complain about delay issues. So they haven't really described who they've polled. Again, they've told us at the poll... They said they poll the people who are their members, members slash supporters. The people who have signed up for an email list. The court has said that signing up for a passive, I think was the phrase used in Sorenson, a passive email list is not... Yes, because they had any ability to decide anything. There was no argument there that they were dictating the agenda. The agenda there was Sorenson Communications was driving that agenda. Yes. So homeless people, back to Judge Millitz, a hypothetical. An NGO with the three elements either could be an actual association or for some reason a functional equivalent. What I couldn't find is a case that allows you to avoid one of those three elements. That's all I'm getting at. Sorry. Yes, Your Honor. And if I could sort of narrow this as to their two sets of... Do you think they don't meet any of the elements? I mean they say that their primary funding comes from their members slash supporters. I don't know they have to use the magic word members. It comes from their folks, their people. Are the ones who are funding them and the ones who are saying what problems are you encountering? Let us know that you want us to address. I think our cases are close to requiring magic words, but I will debate that here. Understood. I think I would step back and say first the associational standing test for traditional association would be that you have a member who could sue in their own right and that you represent their interests and that it's germane to your cause and they aren't necessary here. If you're going to go for the indicia of membership, for that first prong where you show an individual member or in this case a person with the indicia of membership who could sue in their own right, part of the problem here is the initial affidavits from Mr. DeBeer and Mr. Lax failed to show that Mr. DeBeer and Mr. Lax had the indicia of membership. We raised that issue. They came back with an affidavit from their president that says nothing about Mr. DeBeer or Mr. Lax. And so they haven't identified an individual with the indicia of membership who has standing. And this is what would distinguish the prior flyers' rights case. And to some extent the other pending case is that in both of those they've sought to assert standing on behalf of Mr. Hudson, who's their president and who is also a petitioner. And so in the prior case you didn't have to address flyers' rights. I know this case was different. Yeah. And do you dispute whether if he were a member, Mr. DeBeer would have standing? We didn't dispute that number yet. He never says he's going to fly again internationally. Do you have to do that for a petition for rulemaking or not? I don't know the answer to that at the podium here. If he's presumably now been informed what his rights are, if he's not going to fly again internationally, I'm just trying to figure out, but maybe petitions for rulemaking can be based on entirely retrospective experience? Usually under the AP that's not enough. You're right. And I think I couldn't name a case for you, and I hesitate to sort of speculate. It's not something I've thought about. I'm sorry, Your Honor. Well, I mean, everybody talks about they concede they're not a conventional association. I was trying to understand what they meant by that. And the only thing I could look to was the two cases that they cited. And I asked my law clerk to look for some more. But we've got these three elements, and either you meet them or you don't. I would agree, Your Honor, and I would point out the case that they really rely on, AARP. There's an easy way to tell whether you associate and an easy way to tell when you stopped associating with AARP. That's to say you stopped paying dues, you stopped participating. Here, he told us at the podium that anyone that signs up for an e-mail, we don't know if anyone who calls the hotline is also a member. We don't know how one disassociates from their organization. But I'm well over time, and so unless the court has other questions, we would ask you to dismiss the petition for lack of standing or if you reach the merits to deny. Thank you. Thank you. Thank you. Just briefly, the seven e-mails were just examples. The department in its decision said the basis for its decision was a review of the contracts of carriage. And U.S. carriers revealed there was adequate notice regarding the availability of compensation. Our point was that the contracts of carriage on their face show that's not true. They're affirmatively deceptive and misleading. And with respect to the notice that the DOT points to that's now required on the e-tickets and at the ticket counter, it says, passengers embarking upon a journey involving an ultimate destination or stop in a country other than a country of departure are advised that the provisions of an international treaty, as well as a carrier's own contract of carriage, may be applicable to their entire journey. The applicable treaty governs and may limit the liability of carriers to passengers for death or personal injury and for delay of passengers or baggage. What in the world in that language tells anybody, doesn't even identify what treaty if you wanted to look it up online, that you have rights for compensation for delay or what the nature of those rights would be. And the basis, there's no question that it's discretionary. And the basis, the statutory basis was not what my colleague said. It's section 49 U.S.C. 40101 that says in carrying out economic regulation, the Department of Transportation shall consider in a number of factors preventing unfair, deceptive, predatory, or any competitive practices. No question that's discretion. There's no obligation, but the discretion has to be exercised in a reasoned manner that's supported by the evidence they cite in the record, and that wasn't the case here. For that reason, we ask that it be reversed. Thank you. We'll take the case under advisement. Thank you. Thank you.
judges: Rogers, Millett, Randolph